**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: XUEHAI LI, Debtor, <br><br> GIANTSEA NEW ENERGY TECHNOLOGY CO., LTD., <br><br><br> Appellant, <br><br> v. <br><br> ANDREA DOBIN, Chapter 7 Trustee, <br><br> Appellee. | Civil Action No. 22-07071 (GC) <br><br> On Appeal from <br> Bankruptcy Case No. 20-14367 (CMG) <br> Adversary Pro. No. 20-01639 (CMG) <br><br> **OPINION** |

**CASTNER, District Judge**

     **THIS MATTER** comes before the Court upon an appeal by Giantsea New Energy Technology Co., Ltd., from the November 28, 2022 Order issued by the Bankruptcy Court in Adversary Proceeding Number 20-01639, which granted summary judgment to the Chapter 7 Trustee Andrea Dobin. (ECF No. 1.) The Court has carefully considered the parties' submissions, and for the reasons set forth below, **AFFIRMS** the Bankruptcy Court's Order.

I.    **BACKGROUND**

    A. FACTUAL & PROCEDURAL BACKGROUND

    Debtor Xuehali Li and his then-wife, Yun Zhang, owned and lived at a property on Princeton-Kingston Road in Princeton, New Jersey. (ECF No. 5-1 at 107.[1]) The property had

---

[1]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

been purchased by the couple in February 2014, and title to the property had been placed in both their names as tenants by the entirety.[2]  (*Id.* at 8 ¶¶ 11-12, 107-08 ¶¶ 1-2; ECF No. 1-2 at 4:12-14; ECF No. 5-2 at 7-8 ¶¶ 1-2.)

In March 2015, Zhang initiated divorce proceedings against the Debtor in the Chancery Division, Family Part, of the Superior Court of New Jersey, Mercer County.  (ECF No. 5-1 at 108 ¶ 3; ECF No. 5-2 at 8 ¶ 3.)  These proceedings did not culminate in a Final Judgment of Divorce until August 20, 2019.[3]  (Civ. No. 22-04321, ECF No. 10 at 2.)

In August 2015, Giantsea commenced an action against the Debtor in the Superior Court of New Jersey, Mercer County, Docket No. MER-L-1855-15, for alleged defaults by the Debtor under a loan agreement that gave the Debtor a total of $2,235,000.00, which the Debtor allegedly used to purchase the Princeton property.[4]  (ECF No. 5-1 at 96, 108 ¶ 4; ECF No. 5-2 at 8 ¶ 4.) Giantsea is a privately-owned company in the People's Republic of China whose majority shareholder is the Debtor's father with the Debtor owning the remaining interest.[5]  (ECF No. 5-1 at 7, 49, 96.)  Giantsea did not name Zhang, the Debtor's then-wife, in the state-court complaint

---

[2]      "A tenancy by the entirety is a form of joint ownership created 'when property is held by a husband and wife with each becoming seized and possessed of the entire estate.'"  *In re Weiss*, 638 B.R. 543, 550 (Bankr. D.N.J. 2022) (quoting *N.T.B. v. D.D.B.*, 121 A.3d 910, 918 (N.J. Super. Ct. App. Div. 2015)).  "Spouses, as tenants by the entirety, are provided a 'means of protecting marital assets . . . and . . . security for one spouse on the death of the other.'"  *Id.*

[3]      *See also Li v. Zhang*, 2023 WL 4167869, at *1 (N.J. Super. Ct. App. Div. June 26, 2023) ("Following years of contentious litigation and defiance of court directives on the part of plaintiff, a final judgment of divorce . . . was entered on August 20, 2019.").

[4]      There is nothing in the record that establishes that these funds were in fact used to purchase the Princeton property, and the Bankruptcy Court in a prior adversary proceeding noted that this was "a disputed issue of fact."  (ECF No. 5-1 at 96 n.1.)

[5]      *See also In re Li*, 654 B.R. 25, 31 n.4 (D.N.J. 2023) ("Li lists approximately a one-third ownership interest in Giantsea.  The remainder is owned by Li's father.").

or seek relief against the Princeton property. (*Id.* at 108 ¶ 5; ECF No. 5-2 at 8 ¶ 5.) On March 15, 2016, default judgment was entered in favor of Giantsea against the Debtor in the amount of $2,268,065.76, plus interest and other charges. (ECF No. 5-1 at 41-42.)

More than two years after the default judgment, on May 29, 2018, the Debtor executed a mortgage, backdated to December 4, 2013, purporting to grant a lien on the Princeton property to Giantsea. (*Id.* at 86-93.) Zhang did not execute the mortgage, and her written consent to the mortgage was not obtained. (*Id.* at 86-93, 96.)

On March 13, 2020, the Debtor filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code, Bankruptcy Case No. 20-14367. (*Id.* at 95; ECF No. 5-4 at 1-7.) On May 20, 2020, Giantsea filed a proof of claim, alleging a secured interest in the Debtor's Princeton property in the amount of $2,268,065.76. (ECF No. 5-3 at 1-8.) Six days later, on May 26, Giantsea amended its proof of claim to an unsecured interest. (*Id.* at 30-36.)

On July 1, 2020, Giantsea filed an adversary complaint against the Debtor, Zhang, and others, Adversary Proc. No. 20-01389. (ECF No. 5-1 at 97.) On July 24, 2020, Giantsea amended its adversary complaint to include the Trustee as a defendant. (*Id.*; ECF No. 5-2 at 30.) Giantsea sought to determine its interest in the Princeton property "for purposes of classification and treatment for any proposed plan of reorganization." (ECF No. 5-1 at 97.) It "assert[ed] that because the [p]roperty was purchased with [Giantsea's] funds [via the loan agreement], it is held in a constructive trust for [Giantsea's] benefit, notwithstanding the fact that title is in the names of Debtor and his" ex-wife. (*Id.*) Giantsea's adversary complaint was dismissed on October 2, 2020. (*Id.* at 106.)

The Bankruptcy Court ruled that, under the entire controversy doctrine, any claims against Zhang regarding the Princeton property were known in 2015 when Giantsea brought suit in state

court against the Debtor, and "there [wa]s no justification for not bringing in the [e]x-spouse as a party when all claims under the Loan Agreement were to be litigated." (*Id.* at 101.) The court wrote that Giantsea's attempt to secure "a declaration that the [p]roperty was held in constructive trust . . . , or in the alternative, that [Giantsea] is entitled to a first priority lien and security interest that is superior to all named defendants" was a "request[] for equitable relief as state law constructs that could have been brought in the" state court action and "because [Giantsea] failed to assert any rights to equitable remedies in the state court," Giantsea was "barred . . . from further litigating the[] claims in th[e] bankruptcy." (*Id.* at 102-03.)

On July 15, 2020, the Bankruptcy Court appointed Appellee Andrea Dobin (the "Trustee") as the Chapter 11 Trustee for the Debtor's estate in the main bankruptcy case. (*Id.* at 95; ECF No. 5-4 at 70.) On October 22, 2020, the Bankruptcy Court converted the Chapter 11 bankruptcy case to one under Chapter 7 of the Bankruptcy Code. (ECF No. 5-4 at 71.) Dobin remained the Trustee of the Debtor's estate. (*Id.* at 74.)

On December 28, 2020, the Trustee initiated an adversary proceeding in the Debtor's bankruptcy case, Adversary Proc. No. 20-01639, to have Giantsea's claim on the Princeton property classified as unsecured and subordinated to the Trustee's interest. (ECF No. 5-1 at 11-13.) This is the adversary proceeding from which the present appeal arises. While the proceeding was pending, the Bankruptcy Court authorized the Trustee on March 9, 2021, to sell the Princeton property, with the consent of Zhang, to a buyer in the amount of $1,840,000.00, which was the highest offer received. (ECF No. 5-4 at 75-78.) On October 11, 2022, the Trustee moved for summary judgment in its adversary proceeding, asking the Bankruptcy Court to "avoid[] [the] unperfected lien against property of the estate." (ECF No. 5-1 at 19-20.) The motion was granted on November 28, 2022. (ECF No. 1 at 4.)

### B. BANKRUPTCY COURT'S RULING ON SUMMARY JUDGMENT

The Bankruptcy Court concluded that the purported mortgage that the Debtor granted to Giantsea in 2018 "constitutes an unperfected lien against the [Princeton] [p]roperty and/or any of the proceeds from the sale thereof and is unenforceable against property of the [Debtor's] Estate." (ECF No. 1-1 at 3.)  As a result, and pursuant to 11 U.S.C. § 544, the court declared that "the rights of Giantsea in the [p]roperty and the proceeds of sale . . . are subordinated to the rights of the Trustee." (*Id.*)

In reaching its conclusion, the Bankruptcy Court found that the Debtor had executed the mortgage "without the written consent of his [e]x-[w]ife to whom he was married at the time." (*Id.* at 2.)  Accordingly, the court found that the unilateral mortgage between Giantsea and the Debtor as to the Princeton property that was owned by the Debtor and Zhang as tenants by the entirety "violates the provisions of N.J. Stat. Ann. § 46:3-17.4," which "require[es] that the [m]ortgage be executed by both spouses if and when title to property is held as tenants by the entirety." (*Id.*)  The Bankruptcy Court further found that the mortgage had been "backdated to a date that pre-dated the purchase of the [p]roperty . . . when the Debtor could not have granted Giantsea a valid mortgage," and Giantsea filed its amended claim in the bankruptcy proceeding "as unsecured, serving as *prima facie* evidence that Giantsea's claim is not secured by the [p]roperty or the proceeds of sale of same." (*Id.* at 3.)

Finally, the Bankruptcy Court found that its decision in the earlier adversary proceeding, Adversary Proc. No. 20-01389, that applied "the entire controversy doctrine [to] bar[] Giantsea from attempting to assert an interest in the [p]roperty or its proceeds by virtue of imposition of a constructive trust or equitable lien and/or any other interest other than that which was granted by

the" New Jersey Superior Court's March 15, 2016 default judgment "is the law of the case" and had to be respected. (*Id.*)

## II.   **LEGAL STANDARD**

In cases originating in the Bankruptcy Court, district courts occupy the first level of appellate review. 28 U.S.C. § 158(a)(1) grants a district court jurisdiction "to hear appeals from final judgments, orders and decrees" of the bankruptcy court. A court considering such an appeal "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (quoting *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020)). And a court "must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (quoting *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989)). The district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Holmes*, 603 B.R. 757, 770 (D.N.J. 2019) (citation omitted).

## III.   **DISCUSSION**

Under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, courts "view[] the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the

case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On appeal, Giantsea advances three arguments as to why this Court should find that the Bankruptcy Court erred in its summary judgment ruling. *First*, N.J. Stat. Ann. § 46:3-17.4 should not have been relied upon to void the 2018 mortgage that the Debtor entered into with Giantsea, because the statute does not use the word "void" and equity favors enforcing the mortgage against the Debtor's ex-wife whose "knowledge and consent to the mortgage should be implied." (ECF No. 4 at 8-10.) *Second*, the fact that Giantsea amended its proof of claim to unsecured was not dispositive, and Giantsea was not "required to file a proof of claim at all." (*Id.* at 11.) *Third*, there were factual disputes that precluded summary judgment, and "[t]estimony from the Debtor or Zhang would have provided a clearer factual image of the circumstances under which the [m]ortgage was provided." (*Id.* at 11-12.) The Court will address each argument.

As to Giantsea's contention that there were factual disputes that should have precluded summary judgment, this is not supported by the record. Not only does Giantsea fail to identify specific material facts that were in genuine dispute, (*see id.* at 11-14), but the crucial facts that the Bankruptcy Court relied upon in its decision were either agreed to by Giantsea or confirmed by documentary evidence: namely, that the Princeton property was purchased and owned by the Debtor and Zhang as tenants by the entirety (ECF No. 1-2 at 4:12-14; ECF No. 5-1 at 8 ¶¶ 11-12, 107-08 ¶¶ 1-2; ECF No. 5-2 at 7-8 ¶¶ 1-2), and Zhang did not sign the purported mortgage that the Debtor unilaterally granted to Giantsea while the Debtor and Zhang were still married (ECF No. 1-2 at 4:12-14; ECF No. 5-1 at 86-93).

Ignoring these undisputed facts, Giantsea focuses in its appellate brief on a question that the Bankruptcy Court posed to the parties during oral argument as to whether an "evidentiary hearing [was needed] to find out whether th[e] mortgage was given in good faith." (ECF No. 1-2 at 6:10-12.) Giantsea cites this question and claims that this was a "tacit[] acknowledge[ment] that there existed material issues of fact" that made summary judgment improper. (ECF No. 4 at 11-12.) What Giantsea does not mention, however, is that it argued *against* the need for an evidentiary hearing to the Bankruptcy Court. Indeed, Giantsea's counsel stated that he was "not sure [that] an evidentiary hearing would help the [Bankruptcy] Court here." (ECF No. 1-2 at 8:21-9:6.) Counsel went on to say: "Obviously if the Court were to want to hear evidence of that, we would present it. But I'm not really sure whether that's going to be helpful."[6] (*Id.* at 9:6-8)

Giantsea's attempt to have it both ways is improper. It cannot argue to the Bankruptcy Court that an evidentiary hearing would not have been helpful in resolving the issues on summary judgment and then, on appeal, argue that summary judgment without such a hearing was in error. Although litigants are granted some leeway on appeal, it is well settled under the invited error doctrine that a party typically "cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession." *Arellano v. Davis*, Civ. No. 19-1001, 2022 WL 819601, at *7 (D.N.J. Mar. 18, 2022) (quoting *Lesende v. Borrero*, 752 F.3d 324, 337 (3d Cir. 2014)). In any event, even setting aside Giantsea's contradictory positions, Giantsea has pointed to no evidence or testimony that could have been introduced at an evidentiary hearing that would have altered the Bankruptcy Court's analysis of the legal issues raised by the Trustee's motion for summary judgment.

---

[6]     The Trustee also argued below that an evidentiary hearing was unnecessary to resolve the motion. (*See* ECF No. 1-2 at 6:13-15 ("I don't think so, Your Honor. The statute is very specific, as Your Honor has said. She did not sign this.").)

As to Giantsea's contention that its amended proof of claim was "not dispositive," this is not in dispute as this was just one of the non-dispositive factors considered by the Bankruptcy Court. The Bankruptcy Court found that Giantsea's amended claim, which represented that Giantsea's claim was unsecured, "serv[e]d as *prima facie* evidence" that Giantsea potentially viewed its mortgage as unenforceable against the Debtor's Princeton property. Otherwise, reasoned the court, there would have been little reason for Giantsea to amend its own claim from secured to unsecured. (ECF No. 1-1 at 3.) The Court sees no error in the Bankruptcy Court's approach. Proof of claims that comply with the Federal Rules of Bankruptcy Procedure have long been afforded "*prima facie* evidentiary effect," and Giantsea was not prejudiced by the Bankruptcy Court noting that Giantsea had filed an unsecured claim. *See* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim.").

As to the crux of Giantsea's challenge, which is that the Bankruptcy Court erred in ruling that the 2018 mortgage was void and/or unenforceable, the Court finds that the Bankruptcy Court correctly applied New Jersey law to the facts of this case, and Giantsea has not cited to authority that compels a contrary result.

In New Jersey, prior to 1988, a spouse could unilaterally encumber his or her rights in property held as a tenancy by the entirety, and creditors could then pursue the sale/partition of the property, subject to a test as to whether it was equitable to do so under the circumstances. *See Jimenez v. Jimenez*, 185 A.3d 954, 957 (N.J. Super. Ct. App. Div. 2018) ("[P]rior to the adoption of N.J.S.A. 46:3-17.4, case law in [New Jersey] had authorized courts to compel the partition and sale of a spouse's interests in property held in a tenancy by the entirety, in instances where equitable considerations justified such a remedy."); *see also* Sarah J. Fischer, *Yours, Mine, or*

*Ours: A Proposal for Sensible Reform of the Massachusetts Tenancy-by-the-Entirety Statute*, 46 Suffolk U. L. Rev. 1133, 1147-48 (2013) ("In New Jersey, prior to 1988, a spouse could encumber his or her rights in property held as a tenancy by the entirety, and the creditors could seek partition, subject to a balancing test.").

In 1987, however, the New Jersey Legislature enacted a series of statutes governing property owned by tenants in the entirety. *See* N.J. Stat. Ann. §§ 46:3-17.2 to 46:3-17.4. The statutes, which apply to tenancies by the entirety created on or after April 4, 1988, were "a legislative pronouncement meant to provide greater protection to entireties property and to shield entireties assets from execution by creditors of a single spouse." *In re Montemoino*, 491 B.R. 580, 590 (Bankr. M.D. Fla. 2012).

Relevant here is N.J. Stat. Ann. § 46:3-17.4, which states:

> Neither spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses.

[N.J. Stat. Ann. § 46:3-17.4.]

The Bankruptcy Court determined that the purported mortgage that the Debtor granted to Giantsea (a corporation privately owned by the Debtor and his father) was void because it was not signed by the Debtor's then-wife Zhang and because there is no evidence of written consent from Zhang, despite the Princeton property being owned by the Debtor and Zhang as tenants by the entirety. The court ruled that N.J. Stat. Ann. § 46:3-17.4 plainly requires "the written consent of *both spouses*" in order to "sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation." (ECF No. 1-1 at 2 (emphasis added).)

Giantsea's position is that it was an error for the Bankruptcy Court to declare the mortgage "void," because N.J. Stat. Ann. § 46:3-17.4 does not expressly use the word "void." (ECF No.

ECF No. 4 at 8 ("The term 'void' does not appear in the statutory plain language.").)   This argument finds little support among relevant authorities.   New Jersey's courts have emphasized that the statute means "literally" what it states, *Jimenez*, 185 A.3d at 958 ("Section 17.4 literally commands that 'neither spouse' may sever, alienate, or otherwise affect their shared interests in the tenancy by the entirety."), and when one spouse attempts to unilaterally encumber property co-owned as tenants by the entirety, such action violates the Legislature's clear prohibition and the resulting encumbrance is either "void" or "unenforceable" as a matter of law.   *See In re Wanish*, 555 B.R. 496, 499 (Bankr. E.D. Pa. 2016) ("[T]he prohibition on a spouse's ability to alienate his or her own interest in entireties property under N.J.S.A. 46:3-17.4 'evidences the legislature's intent to preserve the entireties estate and to elevate the interest of a married couple in the protection of their entireties property over the interest of a creditor of a single spouse in executing on such property.'" (quoting *Montemoino*, 491 B.R. at 589)); *Vander Weert v. Vander Weert*, 700 A.2d 894, 897 (N.J. Super. Ct. App. Div. 1997) ("[The statute] prohibits either spouse from severing, alienating or otherwise affecting their respective interests in the tenancy during the marriage or upon separation without the written consent of the other."); *see also* 29 N.J. Prac., Law of Mortgages § 6.1 (2d ed. Oct. 2023) ("On or after April 4, 1988, . . . a mortgage [executed by only one spouse] is void without the consent of the other tenant-spouse."); Fischer, *Yours, Mine, or Ours*, 46 Suffolk U. L. Rev. at 1148 ("The new statute, which has only a prospective effect, prohibits unilateral encumbrances.").   Moreover, the statute has been interpreted to bar "creditors from reaching not only a debtor's shared interest in tenancy-by-the-entirety property but also the sales proceeds from that property."   *PNC Equip. Fin., LLC v. Carr*, 2023 WL 2523833, at *1 (9th Cir. Mar. 15, 2023).

Looking beyond New Jersey, courts have relied on similar principles as those that undergird N.J. Stat. Ann. § 46:3-17.4 to void mortgages signed by only one spouse when the property was owned as tenants by the entirety. In *Zivic v. Zivic*, for example, the district court found that a husband who had owned a property with his wife "could not legally convey a mortgage interest while the parties were still husband and wife," even if the couple later divorced. 21 V.I. 290, 294 (Terr. V.I. 1985). The court ruled that a contract the husband entered into "without [the wife's] consent while they were legally married" and that sought to convey a mortgage interest "was void as a matter of law by virtue of the fact that the property was owned by Plaintiff and Defendant . . . , then husband and wife, as tenants by the entirety." *Id.* at 293. Quoting the United States Court of Appeals for the Third Circuit, the district court wrote that "when husband and wife own property as tenants by the entirety, . . . until the end of the marriage (by divorce or death of one spouse), neither spouse may compel partition *nor sever the entirety property by a unilateral conveyance* nor affect the survivorship interest of the other spouse." *Id.* at 295 (emphasis in original) (quoting *Napotnik v. Equibank & Parkvale Sav. Ass'n*, 679 F.2d 316, 319 (3d Cir. 1982)). Other courts have reached the same conclusion. *See, e.g.*, *Torovich v. Oddo*, 2019 WL 1050068, at *2 (Mich. Ct. App. Mar. 5, 2019) (finding under Michigan law that mortgage was "void" where property was owned by couple as tenants by the entirety and wife did not sign the mortgage, because husband "could not separately mortgage his interest in the property at that time").

In view of the above authorities, the Bankruptcy Court in this case did not err in ruling that the purported mortgage that the Debtor unilaterally granted to Giantsea in 2018 violated N.J. Stat. Ann. § 46:3-17.4 and was thereby void.

Giantsea next argues that, even if the unilateral mortgage could be found to be void for violating N.J. Stat. Ann. § 46:3-17.4, it should be enforced as a matter of equity. Without any

citations to the factual record and without proffering competent evidence, Giantsea insists that Zhang should be implied to have had "knowledge and consent[ed] to the mortgage." (ECF No. 4 at 8.) Giantsea does not explain how such a result could be reached when N.J. Stat. Ann. § 46:3-17.4 plainly requires "written consent," nor has the Court identified a parallel example of a court applying New Jersey law to equitably enforce a mortgage that violated the statute on the basis that consent was "implied."[7]

The Court notes that Pennsylvania has a doctrine its courts refer to as the "entireties presumption" that is relied on, at times, to equitably enforce mortgages that have otherwise violated Pennsylvania's common law as to tenants by entirety. *See In re Pearsall*, Civ. No. 14-10616, 2016 WL 3976479, at *16 (Bankr. W.D. Pa. July 19, 2016) ("[A] line of cases decided under Pennsylvania law recognizing an 'entireties presumption' pursuant to which either spouse presumptively has the power to act for both in matters of entireties, without any specific authorization, provided the fruits or proceeds of such action inures to the benefit of both and the entireties estate is not terminated.").

---

[7]     Giantsea cites several judicial opinions that are inapposite.  For example, in *Reibman v. Myers*, the plaintiff-wife had taken title to the property in July 2005, after the property was already encumbered with a mortgage that had been obtained by the husband in January 2005, and the wife was later charged with knowledge of said mortgage that existed prior to when she took title.  164 A.3d 1080, 1088 (N.J. Super. Ct. App. Div. 2017) ("When plaintiff took title on July 20, 2005, the property was encumbered by the Ameriquest mortgage and she was charged with such knowledge.").  Here, the Debtor and Zhang purchased and owned the Princeton property as tenants by the entirety for several years before the Debtor executed the unilateral mortgage to Giantsea.  Similarly, in *S.E.C. v. Antar*, the district court refused to allow the Securities and Exchange Comission to dispossess the couple of the marital home where the judgment—not a mortgage—was against the husband only.  Relying on case law pre-dating N.J. Stat. Ann. § 46:3-17.4, the court wrote that "[f]orcing dispossession of the marital home, held as a tenancy by the entirety, would be . . . a harsh penalty.  The equities of the present situation dictate that, as long as [the wife's] right of survivorship remains intact, the SEC may not satisfy its judgment against Sam M. by forcing foreclosure or partition of the marital home."  120 F. Supp. 2d 431, 450 (D.N.J. 2000), *aff'd*, 44 F. App'x 548 (3d Cir. 2002).

For example, in *Deutsche Bank Nat. Tr. Co. v. Evans*, the district court reversed the bankruptcy court's order that had invalidated a mortgage and promissory note that had only been executed by the husband, even though the property was owned by husband and wife as tenants by the entirety. 421 B.R. 193, 195-96 (W.D. Pa. 2009). The district court explained that, under Pennsylvania law, there exists a "presumption that either tenant by the entirety may, without specific consent, act on behalf of both tenants in certain instances." *Id.* at 197. The court determined that the case before it was one such instance because the wife "had knowledge of, and consented to, the granting of the mortgage executed only by her husband . . . . The purchase money mortgage was used to complete the purchase of the family home. The benefit of the mortgage, therefore, inured to both [wife and husband], and the transaction did not divest the entireties property from the marital estate." *Id.* at 197. The court emphasized that it was significant that the wife had "acknowledg[ed] . . . consent to the mortgage." *Id.* at 198.

No court in New Jersey seems to have adopted Pennsylvania's "entireties presumption" or similar doctrine to enforce a mortgage otherwise unenforceable under N.J. Stat. Ann. § 46:3-17.4, and as already noted, New Jersey's statute expressly requires "written consent," which seemingly precludes reliance on an unwritten acknowledgement. Even setting those critical issues aside, there is also no documentation or testimonial evidence presented on appeal that Zhang actually consented to the 2018 mortgage. To the contrary, the record includes evidence that Zhang was attempting to protect her independent interest in the property prior to the mortgage being executed.

After Giantsea brought suit in 2015 against the Debtor in New Jersey Superior Court due to the Debtor's alleged default on their loan agreement, it appears that Zhang inquired as to whether it was necessary for her to intervene in that matter to protect her interests, including in the Princeton property. In correspondence dated October 14, 2015, Giantsea's counsel wrote to inform Zhang

and her counsel that "it would be frivolous to join Ms. Zhang . . . because she is not a party to the loan agreement," and "[i]f Giantsea prevails, it will have a judgment against Mr. Li in his individual capacity only.  On its own, a judgment would have no bearing on [Ms. Zhang's] purported interest in certain real estate."   (ECF No. 5-1 at 84-85.)   This correspondence demonstrates that Giantsea was well aware, nearly three years before the Debtor unilaterally executed the disputed mortgage in Giantsea's favor, that Zhang had an independent interest in property and that she was seeking to protect her interest.  Giantsea's attempt now to have the unilateral mortgage enforced without evidence of Zhang's written consent is unreasonable.

Indeed, New Jersey's courts have underscored that "prospective mortgagees, who obviously have the capacity to determine by a title search if a proposed mortgage violates [N.J. Stat. Ann. § 46:3-17.4], are chargeable with the consequences of this statutory prohibition," and "the mortgaging by one spouse of his own interest in the tenancy by the entirety is so unusual a transaction in the arm's length commercial world as to put the mortgagee on notice that there are extraordinary circumstances at work and . . . a mortgagee . . . obviously has a duty of inquiry. . . . [I]t would seem . . . fair to surmise that a mortgagee would never take such an interest without full knowledge of the relevant circumstances." *Vander Weert*, 700 A.2d at 897; *see also* 29 N.J. Prac., Law of Mortgages § 6.1 (2d ed. Oct. 2023) ("A mortgagee, mortgaging the interest of one spouse's interest in a tenancy by entirety, has a duty of inquiry because such a mortgage is so unusual as to put the mortgagee on notice that there are extraordinary circumstances at work and, most probably, a divorce pending or contemplated, and equity strongly favors the interest of the nondebtor spouse over that of the mortgagee.").  That Giantsea accepted the 2018 mortgage from the Debtor without obtaining confirmation in writing that Zhang consented is, frankly, a defect of Giantsea's own

making, particularly when there is evidence that counsel for Zhang had previously contacted Giantsea to flag that she had interests in property that she would want to protect.

Finally, there may very well have been grounds to find that Giantsea should have been estopped from relitigating the validity/enforceability of the 2018 mortgage in the present adversary proceeding.   In its earlier adversary complaint that was dismissed by the Bankruptcy Court, Giantsea represented that the New Jersey Superior Court had issued "an order dated December 23, 2019" in the Debtor's and Zhang's divorce proceedings that "[a]ny liens on the [Princeton] property by any entity owned or controlled by either party shall be discharged," which included Giantsea's purported 2018 mortgage. (Adversary Proc. No. 20-01389, ECF No. 4 at 5-6.) As a result, Giantsea had sought in its adversary proceeding to have the Princeton property ruled a constructive trust for its benefit, but the Bankruptcy Court dismissed Giantsea's adversary complaint with prejudice. (ECF No. 5-1 at 101-03.) The present arguments that Giantsea has asserted could be deemed to be an impermissible collateral attack on the New Jersey Superior Court's December 23, 2019 order, *see In re James*, 940 F.2d 46, 53 (3d Cir. 1991) ("[F]ederal district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment on the merits."), or precluded by the Bankruptcy Court's earlier ruling.  Ultimately, however, this Court has affirmed the Bankruptcy Court's decision on the merits for the reasons already stated, and it need not rest on this alternative ground.

## IV.   **CONCLUSION**

For the foregoing reasons, and other good cause shown, the Bankruptcy Court's November 28, 2022 Order granting summary judgment in favor of the Trustee is **AFFIRMED**.   An appropriate Order follows.

Dated: October 31, 2023

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**